UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITY SERVICE COORDINATION, INC., A REFERRAL AND INFORMATION SERVICE LLC; S.O.A.R., INC.; COORDINATED CARE SERVICES, LLC; UNBEFUDDLED, LLC; LLOYD BRINEGAR SHORT & ASSOCIATES, LLC,<br><br>      Plaintiffs,<br>  v.<br><br>RICHARD ARMSTRONG, and LESLIE CLEMENT, in their official capacities,<br><br>      Defendants. | Case No. 1:09-cv-639-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

  Before the Court is Defendants' Motion to Alter or Amend Judgment (Dkt. 50). The Court advised the parties that it would attempt to consider Defendants' motion on an expedited basis, in light of the hearing scheduled for March 25, 2011, to address a remedy in keeping with the Court's decision (Dkt. 48) – for which Defendants seek reconsideration. Due to the Court's schedule and the timing of this motion, the hearing has been vacated and rescheduled for April 11, 2011 (Dkt. 52). Being familiar with the record and on consideration of Defendants' supporting memorandum, the Court will deny the Motion for ther reasons expressed below.

**MEMORANDUM DECISION AND ORDER - 1**

**BACKGROUND**

This action was brought by six Idaho service coordination agencies seeking to enjoin the Idaho Department of Health and Welfare (IDHW)[1] from continuing to implement a change in Medicaid reimbursement rates for service coordination benefits to developmentally disabled adults and children. The reimbursement rate change, effective July 1, 2009, "was the result of a multi-year analysis and collaborative process that began when Idaho Code § 56-118 became law." *Pugatch Aff.*, Dkt. 15, ¶ 6. That law directs IDHW to "implement a methodology for reviewing and determining reimbursement rates" to service coordination agencies. I.C. § 56-118(1).

IDHW took steps to meet the statutory requirements, including conducting its own annual cost studies, and contracting with the consulting firm Johnston-Villegas-Grubbs and Associates, LLC (JVGA) to develop surveys, compile and analyze data, and develop a reimbursement methodology. *See id.* ¶¶ 8, 9, 14, 16, 20, 21. IDHW also hired another consulting firm to compare Idaho reimbursement rates with those of other states. *Id.* ¶ 12. IDHW sought feedback from service coordination agencies, but only a small sample size of providers responded to its surveys. *Id.* ¶ 20. As a result, IDHW used data from the Bureau of Labor Statistics (BLS) for Idaho professional and para-professional wages; for general and administrative costs, IDHW used the maximum percentage allowed (10%) without further supporting data, noting that there was insufficient data to justify using a

---

[1] The named Defendants, Richard Armstrong and Leslie Clement, are the Director of the IDHW and Administrator of the IDHW's Medicaid division, respectively.

different percentage. *Id.* ¶ 23. IDHW submitted State Plan Amendments for the new reimbursement rates to the Centers for Medicare & Medicaid Services (CMS)[2], which determined that the plans complied with federal regulations. *Id.* ¶ 24; *see Simnitt Aff.*, Dkt. 14-1, Exhs. D-20 and D-21.

Plaintiffs moved for a preliminary injunction, which the Court denied on consideration of the parties' pleadings, without oral argument. *Order*, Dkt. 32. The parties each moved for summary judgment (Dkts. 36, 40); and after considering the parties' briefing and arguments from hearing on January 26, 2011, the Court issued an Order (Dkt. 48) granting summary judgment to Plaintiffs, and denying as to Defendants. Defendants now move for reconsideration.

**LEGAL STANDARD**

A motion to reconsider requires an analysis of two important principles: (1) error must be corrected; and (2) judicial efficiency demands forward progress. The former principle has led courts to hold that a denial of a motion to dismiss or for summary judgment may be reconsidered at any time before final judgment. *Preaseau v. Prudential Insurance Co.,* 591 F.2d 74, 79-80 (9th Cir. 1979). While even an interlocutory decision becomes the "law of the case," it is not necessarily carved in stone. Justice Oliver Wendell Holmes concluded that the "law of the case" doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their

---

[2] CMS is "the federal agency that administers both the federal Medicare and Medicaid programs and enforces the rules and regulations that [IDHW] must comply with to receive federal funding for these programs." *Pugatch Aff.*, ¶ 16.

power." *Messinger v. Anderson*, 225 U.S. 436, 444 (1912). "The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous. There is no need to await reversal." *In re Airport Car Rental Antitrust Litigation*, 521 F.Supp. 568, 572 (N.D.Cal. 1981)(Schwartzer, J.).

The need to be right, however, must co-exist with the need for forward progress. A court's opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988). As acknowledged by Defendants, reconsideration is at the court's discretion, and is an "extraordinary remedy" that should only be granted in "highly unusual circumstances." *Rodgers v. Watt*, 722 F.2d 456, 460 (9th Cir. 1983); *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003); *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999).

"Courts have distilled various grounds for reconsideration of prior rulings into three major grounds for justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or to prevent manifest injustice." *Louen v Twedt*, 2007 WL 915226 (E.D.Cal. March 26, 2007); *see also School Dist. No. 1J, Mutnomah Cy, Or. v. AC and S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Here, Defendants seek reconsideration for clear error, asserting two bases which the Court discusses as follows.

## ANALYSIS

**1.      The Court's Decision Is Not In Conflict With *Chase Bank v. McCoy***

Arguing that the Court committed clear error, Defendants argue that the Court's decision (Dkt. 48) conflicts with the recent United States Supreme Court decision in *Chase Bank v. McCoy*, 131 S.Ct. 871 (2011). In *Chase*, the Supreme Court considered conflicting interpretations by the Ninth and First Circuit Courts of Appeals, of Regulation Z, passed by the Federal Reserve Board pursuant to the Truth in Lending Act (TILA). *Chase*, 131 S.Ct. at 877. The court in *Chase* found "Regulation Z to be ambiguous as to the question presented," and thus sought amicus briefing from the Board to consider "the Board's own interpretation of the regulation for guidance." *Id.* at 880. Noting that the court must defer to an agency's interpretations of its own regulations absent plain error or inconsistency with the regulation, the *Chase* court found no inconsistency, and thus adopted the Board's interpretation of Regulation Z. *Id.* (citing *Auer v. Robbins*, 519 U.S. 452 (1997)).

Defendants here liken CMS's approval of IDHW's State Plan Amendment (SPA) to the Board's interpretation of Regulation Z in *Chase*. Defendants argue that the Court's decision (Dkt. 48) improperly relied on Ninth Circuit precedent[3] over CMS's conclusion that IDHW's SPA complied with § 30(A) of the Medicaid Act. The Court finds *Chase* inapplicable. *Chase* does not stand for the proposition that a court must defer to an agency's conclusion, even when that decision is not supported by a reasoned analysis. A court must first consider whether an agency's interpretation is erroneous or inconsistent

---

[3]The cases at issue are *Indep. Living Ctr. of S. Cal, Inc. v. Maxwell-Jolly*, 572 F.3d 644 (9th Cir. 2009) and *Orthopaedic Hosp. v. Belshe*, 103 F.3d 1491 (9th Cir. 1997).

**MEMORANDUM DECISION AND ORDER - 5**

with the law. *Chase*, 131 S.Ct. at 880; *Chevron U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837, 843 (1984). Without articulation of how an agency arrived at its conclusion, this assessment by the court cannot be done.

Here, CMS did not indicate whether, in approving IDHW's SPA, CMS specifically rejected *Indep. Living* and *Orthopaedic*, and if so, whether the rejection was based on a contrary interpretation of § 30(A). Notably, neither party has asserted that the Ninth Circuit's decisions in *Indep. Living* or *Orthopaedic* were inconsistent with § 30(A). Nor does the Court conclude that an inconsistency exists. Accordingly, Defendants have failed to show clear error. The Court finds that its decision is not contrary to *Chase*, and thus, *Chase* offers no basis for reconsideration.

2.  **The Court Did Not Substitute Its Judgment For That Of IDHW**

Defendants argue that the Court clearly erred by substituting its own judgment for that of the IDHW on a technical matter. Again, the Court disagrees. As noted by the Ninth Circuit, "[j]udgments can be made as to the efficiency of the providers, the economies they practice and the quality of services they deliver." *Orthopaedic*, 103 F.3d at 1496. However, the record here does not reflect that IDHW exercised any judgment regarding the economy or efficiency of providers, in arriving at the 10% rate for indirect costs. As noted in the Court's decision (Dkt. 48 at 13), IDHW did not dispute that there were multiple cost studies reflecting rates much higher than 7.7%, the figure on which IDHW relied in setting the 10% rate.

The Court did not, as Defendants suggest, indicate that IDHW is obligated to set a

with the law. *Chase*, 131 S.Ct. at 880; *Chevron U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837, 843 (1984). Without articulation of how an agency arrived at its conclusion, this assessment by the court cannot be done.

Here, CMS did not indicate whether, in approving IDHW's SPA, CMS specifically rejected *Indep. Living* and *Orthopaedic*, and if so, whether the rejection was based on a contrary interpretation of § 30(A). Notably, neither party has asserted that the Ninth Circuit's decisions in *Indep. Living* or *Orthopaedic* were inconsistent with § 30(A). Nor does the Court conclude that an inconsistency exists. Accordingly, Defendants have failed to show clear error. The Court finds that its decision is not contrary to *Chase*, and thus, *Chase* offers no basis for reconsideration.

2.  **The Court Did Not Substitute Its Judgment For That Of IDHW**

Defendants argue that the Court clearly erred by substituting its own judgment for that of the IDHW on a technical matter. Again, the Court disagrees. As noted by the Ninth Circuit, "[j]udgments can be made as to the efficiency of the providers, the economies they practice and the quality of services they deliver." *Orthopaedic*, 103 F.3d at 1496. However, the record here does not reflect that IDHW exercised any judgment regarding the economy or efficiency of providers, in arriving at the 10% rate for indirect costs. As noted in the Court's decision (Dkt. 48 at 13), IDHW did not dispute that there were multiple cost studies reflecting rates much higher than 7.7%, the figure on which IDHW relied in setting the 10% rate.

The Court did not, as Defendants suggest, indicate that IDHW is obligated to set a

reimbursement rate for indirect costs "at least close to 79%," or any other prescribed percentage.  *Def's Mem.*, Dkt. 50-1 at 7.  Rather, the Court has ordered IDHW to conduct an additional, but focused, cost study, to determine an indirect cost rate that bears a reasonable relationship to the efficient cost of providing quality services, as required by law.  *Indep. Living*, 572 F.3d at 651-52; *Orthopaedic*, 103 F.3d at 1496.  The Court was unconvinced that IDHW undertook sufficient efforts to collect data supporting its chosen rate for indirect costs, or to support using the 10% default rate.  Nothing in Defendants' Motion to Alter or Amend Judgment leads the Court to conclude otherwise.  While the Court recognizes a need to balance competing interests, there is no evidence of balancing by IDHW, only guessing.

Defendants have failed to convince the Court that it substituted its judgment for IDHW or otherwise engaged in clear error.  Accordingly, the Court finds no basis to alter or amend its Order (Dkt. 48).

## ORDER

**IT IS ORDERED THAT** the Motion for Reconsideration (Dkt. 50) is DENIED.

DATED:  **March 30, 2011**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge