UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITY SERVICE COORDINATION, INC., A REFERRAL AND INFORMATION SERVICE LLC; S.O.A.R., INC.; COORDINATED CARE SERVICES, LLC; UNBEFUDDLED, LLC; LLOYD BRINEGAR SHORT & ASSOCIATES, LLC,<br><br>          Plaintiffs,<br>   v.<br><br>RICHARD ARMSTRONG, and LESLIE CLEMENT, in their official capacities,<br><br>          Defendants. | Case No. 1:09-cv-639-BLW<br><br>**ORDER AS TO REMEDY** |

The Court conducted a hearing on April 11, 2011, to address what remedy to apply in light of its decision granting summary judgment to Plaintiffs and denying as to Defendants. *Order*, Dkt. 48. The Court has considered the parties' oral argument and briefing, including supplemental memoranda submitted at the Court's request. Being familiar with the record, pleadings, and argument of counsel, the Court now enters the following order.

## BACKGROUND

Plaintiffs are six Idaho service coordination agencies who filed this action against

Director of Idaho Department of Health and Welfare (IDHW) Richard Armstrong, and Administrator of IDHW's Medicaid Division Leslie Clement. Plaintiffs seek to enjoin Defendants from continuing to implement a change in Medicaid reimbursement rates for service coordination benefits provided to developmentally disabled adults and children, which became effective on July 1, 2009. *Compl.*, Dkt. 1. Before July 1, 2009, IDHW reimbursed service coordination agencies on a flat, monthly rate per Medicaid participant. *Simnitt Aff.*, Dkt. 14, ¶10. Since July 1, 2009, IDHW requires service coordination agencies to bill in fifteen-minute increments. IDHW reimburses agencies accordingly. *Id.* ¶ 11.

The 2009 rate change "was the result of a multi-year analysis and collaborative process . . .." *Pugatch Aff.*, Dkt. 15, ¶ 6. From 2005 to 2009, IDHW conducted its own cost studies, contracted with the consulting firm Johnston-Villegas-Grubbs and Associates, LLC (JVGA) to develop surveys, compile and analyze data, and develop a reimbursement methodology, and hired another consulting firm to compare Idaho reimbursement rates with those of other states. *See id.* ¶¶ 8, 9, 12, 14, 16, 20, 21. In April 2008, IDHW prepared draft calculations and sought and used feedback from service coordination agencies. *Id.* ¶ 20.

Despite its efforts, IDHW ultimately used little if any of the cost studies in revising reimbursement rates, due at least in part to the small sample size of providers who responded to its surveys. Instead, IDHW used data from the Bureau of Labor Statistics (BLS) for Idaho professional and para-professional wages. For general and

administrative costs, IDHW used the maximum percentage allowed (10%) without further supporting data, noting that there was insufficient data to justify using a different percentage. *Id.* ¶ 23. IDHW submitted State Plan Amendments for the new reimbursement rates to the Centers for Medicare & Medicaid Services (CMS)[1], which determined that the plans complied with federal regulations. *Id.* ¶ 24; *see Simnitt Aff.*, Dkt. 14-1, Exhs. D-20 and D-21.

Plaintiffs moved for a preliminary injunction, which this Court denied, finding – on the evidence before it – that Plaintiffs were unlikely to prevail. *Order*, Dkt. 32. But later, on consideration of Plaintiffs' motion for summary judgment, the Court agreed that the record failed to support that IDHW's reimbursement rate for indirect costs satisfied the Ninth Circuit's requirement to reasonably relate to efficient and economical (indirect) costs of providing quality services. *See Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly,* 572 F.3d 644,651-52 (9th Cir.2009); *Orthopaedic Hosp. v. Belshe,* 103 F.3d 1491, 1496 (9th Cir.1997).

Defendants moved for, and were denied reconsideration. *Order*, Dkt. 55. The Court requested and was provided briefing from the parties concerning what remedy to impose, in light of the Court's ruling on summary judgment for Plaintiffs. Specifically, the Court asked the parties to address: (1) the need for and appropriateness of injunctive relief until the cost study can be completed and new rates established; (2) the parameters

---

[1] CMS is "the federal agency that administers both the federal Medicare and Medicaid programs and enforces the rules and regulations that [IDHW] must comply with to receive federal funding for these programs." *Pugatch Aff.*, Dkt. 15, ¶ 16.

of the cost study; and (3) the issue of provider cooperation.

## DISCUSSION

**1.     Injunctive Relief Pending Completion of Cost Study**

Pending completion of a new cost study per the Court's Order (Dkt. 48), Plaintiffs request an Order changing the rate back to the July 1, 2009 pre-adjustment rate. *Pl. Br.*, Dkt. 49 at 2, citing *Indep. Living Ctr. Of So. Cal, Inc. v. Shewry*, 543 F.3d 1050, 1065 (9th Cir. 2008). Alternatively, Plaintiffs suggest using the rate of 79% of costs and services – the high figure that IDHW collected in its own studies. *Id*. at 3. Plaintiffs agree with Defendants that the same rate should be applied to all providers, and not just Plaintiffs.

Defendants expressed concern that implementation of rates without first seeking approval from CMS through a State Plan Amendment (SPA) could trigger the loss of federal matching funds. Plaintiffs counter that withholding of federal financial participation would not occur until after the state receives notice and an opportunity for hearing. *Pl. Resp.*, Dkt. 53 at 3, citing 42 CFR § 430.35(a). According to Plaintiffs, so long as IDHW submits a new SPA for the temporary rate change, CMS will continue to provide federal financial participation, retroactive to the first day of the quarter in which the SPA is submitted. *Id.* at 2, *citing* 42 CFR § 430.20.

At hearing, Defendants suggested that IDHW was able to commit resources to conduct a valid cost study on an expedited time-line for submission of a SPA to CMS. According to counsel for Defendants, IDHW could complete the cost study and have a

new calculated rate by June 17, 2011. *IDHW Br.*, Dkt. 57 at 2. Defendants suggest a schedule whereby notice would be published on June 24, 2011. *Id.* (citing 42 C.F.R. § 447.205). Citing to the requirement for publication of a rate change notice, Defendants assert that the earliest effective date for IDHW's plan under the proposed time-line would be June 25, 2011. *IDHW Br.*, Dkt. 57 at 3 (citing 42 C.F.R. § 447.205(d)). However, the regulations also provide that notice is not needed where "[t]he change is required by court order." 42 C.F.R. § 447.205(b). Because the Court is ordering IDHW to conduct the proposed cost study and submit a new SPA, the effective date for an approved plan would be retroactive to April 1, 2011, under 42 C.F.R. § 430.20.

Plaintiffs assert that immediate injunctive relief, pending the cost study, is warranted given the Court's ruling in Plaintiffs' favor on the merits of this action, and its finding that Plaintiffs have been irreparably harmed. However, the Court is loath to impose a remedy that would pull resources away from efforts to complete a valid, expedited cost study, or that might otherwise result – indirectly or inadvertently – in the depletion of funds intended for the benefit of Medicaid recipients or service providers. Also, where – as proposed by Defendants – IDHW is able to complete the cost study, submit a SPA, and gain CMS approval, such that the new plan takes effect, retroactive to April 1, 2011, interim relief is unnecessary.

Given the existing imperfect data, and calculations proposed by the parties, the Court can only make an educated guess as to an appropriate interim rate, pending the results of a new cost study. A reimbursement rate that reflects, as accurately as possible,

the actual (indirect) cost of providing efficient quality services is obviously preferred. However, if the new reimbursement rate is not implemented by June 30, 2011, retroactive to April 1, 2011, then the Court will impose a rate, retroactive to April 1, 2011, calculated as set forth hereinafter.

The parties appear to agree that the existing imperfect data from 2009 shows an hourly rate for direct care staff wages of $22.21, and an hourly rate for all direct care components of $39.74. It also appears the parties agree that indirect costs were 79% of direct costs (according to 2009 data), but dispute whether to calculate indirect costs using direct wages alone, or the total of direct cost components. The Court thus calculates the average of the two indirect cost rates calculated using either method:

$$\$22.21 \times .79 = 17.55 \qquad \$39.74 \times .79 = 31.39$$

$$17.55 + 31.39 = 48.94$$

$$48.94 \div 2 = \$24.47$$

The result is an hourly indirect rate of $24.47. If Defendants are unable to adhere to calculate, propose, and implement a new rate by June 30, 2011, retroactive to April 1, 2011, then the hourly indirect reimbursement rate of $24.47 will be implemented June 30, 2011, retroactive to April 1, 2011.

The Court recognizes that this rate is not tied to statistically significant data. But the Court finds that it bears as reasonable a relationship to the indirect cost of providing efficient quality services as the default rate implemented by IDHW in 2009. Accordingly, the Court finds the rate to be appropriate as interim relief. The potential for

this interim relief to service providers – such as Plaintiffs, where completion and implementation of an accurate study is delayed beyond June 30, 2011, provides an incentive for IDHW to complete its study within the proposed time-line, or as soon thereafter as possible.

2. **Parameters of Cost Study and Provider Participation**

As noted by Defendants, the Court's concern in its order on summary judgment was limited to the rate for indirect costs, for which IDHW used the 10% default rate rather than supporting data. Accordingly, the new cost study need only address indirect costs.

In its initial studies, IDHW was unable to collect sufficient data for a statistically reliable sample size, due to low-provider participation and cooperation. As previously noted, the Court "may be compelled to grant IDHW greater leeway in implementing reimbursement rates that vary from their cost studies, if those studies are rendered imperfect because of a lack of data and a lack of cooperation from the providers." *Order*, Dkt. 48.

Plaintiffs suggest that the survey used before, and advocated by Defendants again here, was overly complicated, which resulted in the minimal provider participation. Defendants challenge this assertion. On review of the survey, Dkt. 51-1, Exh. B, the Court finds that it is not unduly complicated, and agrees with Defendants that a revised survey may cost more than its improvements are worth. However, greater effort to reach into the provider community is warranted. The Court notes that IDHW's prior efforts

ORDER AS TO REMEDY - 7

were laudable. However, the best outcome is reached by obtaining as much data, and as efficiently as possible.

To this end, the Court urges Plaintiffs to assist Defendants in informing the provider community of both the provider and client communities' interest in optimal participation. Defendants shall extend at least the same efforts as before, to encourage provider participation in the survey. If similarly poor participation results, the Court may authorize use of statistics from comparable states, as suggested by Defendants. Where such circumstances arise, Plaintiffs will be given an opportunity to respond.

**ORDER**

**IT IS ORDERED:**

1. Defendants shall extend every effort to complete a cost study and calculate a new reimbursement rate for indirect costs in keeping with the study's results, by June 17, 2011.

2. Defendants shall submit a SPA to CMS reflecting the new rate by June 30, 2011, which would be retroactive to April 1, 2011.

3. If Defendants are unable to submit a SPA based on the new cost study by June 30, 2011, then Defendants shall submit a SPA reflecting the Court ordered hourly rate of $24.47 for indirect costs. This interim rate, pending a SPA based on the new cost study, shall be retroactive to April 1, 2011.

4. Plaintiffs shall assist Defendants in encouraging provider participation in the new cost study. In the event that lack of provider participation results in insufficient data for a statistically significant cost study, the Court will set a briefing schedule and hearing to address the use of statistics from comparable states as a basis for calculating the indirect cost reimbursement rate.

DATED: **April 15, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge