UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITY SERVICE COORDINATION, INC., A REFERRAL AND INFORMATION SERVICE LLC; S.O.A.R., INC.; COORDINATED CARE SERVICES, LLC; UNBEFUDDLED, LLC; LLOYD BRINEGAR SHORT & ASSOCIATES, LLC,<br><br>                Plaintiffs,<br>    v.<br><br>RICHARD ARMSTRONG, and LESLIE CLEMENT, in their official capacities,<br><br>           Defendants. | Case No. 1:09-cv-639-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Plaintiffs' Motion for Attorney Fees (Dkt. 62) and Plaintiffs' Motion to Enforce Judgment (Dkt. 64). The matters are fully briefed and at issue. Having considered the briefing and being familiar with the record, the Court will deny Plaintiffs' motions for reasons expressed in this decision.

## BACKGROUND

Plaintiffs are six Idaho service coordination agencies that provide services to developmentally disabled, mentally ill, physically disabled and medically fragile individuals across the state of Idaho. Defendants are Richard Armstrong, the Director of

Idaho Department of Health and Welfare (IDHW), and Leslie Clement, the Administrator of IDHW's Medicaid Division.

Plaintiffs sought to enjoin Defendants from continuing to implement a change in Medicaid reimbursement rates for service coordination benefits, which became effective on July 1, 2009. *Compl.*, Dkt. 1.  Plaintiffs moved for summary judgment, and the Court agreed that IDHW's adjustment to the reimbursement rate for indirect costs failed to satisfy the Ninth Circuit's requirement that adjustments be reasonably related to efficient and economical (indirect) costs of providing quality services.  *Order*, Dkt. 48; *see also Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly,* 572 F.3d 644,651-52 (9th Cir. 2009); *Orthopaedic Hosp. v. Belshe,* 103 F.3d 1491, 1496 (9th Cir.1997). Defendants moved for, and were denied, reconsideration. *Order*, Dkt. 55.

The Court heard argument regarding what remedy to apply.  On consideration of the record and argument of counsel, the Court ordered the Defendant to complete a cost study, calculate a new reimbursement rate in keeping with that study, and submit a State Plan Amendment (SPA) to Centers for Medicare & Medicaid Services (CMS), reflecting the new rate. *Order*, Dkt. 59.

On July 1, 2011, Defendants filed a Notice of Compliance (Dkt. 61) describing the cost study and statistical analysis performed.  According to the Notice, the IDHW prepared and submitted a SPA which CMS approved on June 30, 2011, and made retroactively effective on April 1, 2011.  *Notice*, Dkt. 61. Defendants assured the Court that claims submitted between April 1 and June 30, 2011 would be reprocessed in July

**MEMORANDUM DECISION AND ORDER - 2**

2011; through the re-processing, providers would be reimbursed the difference between the old and new rates. *Id.*

In their motion for attorney fees and costs, Plaintiffs ask the Court to spread the costs of litigation across all who benefited from the Court's decision for Plaintiffs, applying the equitable common fund doctrine.

In their motion to enforce judgment, Plaintiffs assert that the IDHW's fiscal intermediary has required service providers to reverse bills for services at the old rate, then re-bill at the new rate, before receiving reimbursements. *Scott Aff.*, Dkt 64, ¶ 7. Plaintiffs contend that these additional steps are an undue obstacle to reimbursement, and increase the potential for error. *Id.* Plaintiffs seek an accurate accounting of reimbursements that have occurred to date, and an order requiring any unpaid amounts to be placed in a Court-controlled fund.

## DISCUSSION

**1.      Motion for Attorney Fees**

     **A.      Motion Not Premature**

As an initial matter, Defendants argue that Plaintiffs' motion for attorney fees is premature because no final decision has been issued.  "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Budinich v. Becton Dickinson and Co*., 486 U.S. 196, 199 (1988). Finality is governed by practical considerations and "not abstractions." *Budinich*, 486 U.S. at 201-02.  Defendants correctly observe that judgment has yet to be entered. However, because the Court considers Plaintiffs' motion to enforce order, and fully

resolves the matter here, the Court finds it appropriate to also rule on Plaintiffs' motion

for attorney fees.

**B.      Exception For Equitable Recovery**

It is well established that under the American Rule, litigants bear their own

litigation costs.  *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240,

247-62 (1972).  Courts are forestalled from shifting the cost of litigation to other parties,

except where one or more of three exceptions exist.

First, statutes can provide for an award of attorney fees. *Alyeska*, 421 U.S. at 263.

This exception effectuates Congress's determination that litigation protecting certain

public policies is beneficial to society and should be encouraged.  *Id.*  Second, a court can

assess attorney fees against a party exhibiting vexatious conduct. *Chambers v. NASCO,*

*Inc.*, 501 U.S. 32, 45-46 (1991). This exception is punitive, and discourages incivility in

litigation.  *Id.*  Third, courts have the equitable power to award attorney fees when justice

so requires.  *Hall v. Cole*, 412 U.S. 1, 4-5 (1973).  This equitable exception encompasses

the "common fund" doctrine, argued by Plaintiffs here, and also the "substantial benefit"

doctrine, referenced but not directly discussed by Plaintiffs.  *Id.*

The two doctrines rest "on the perception that persons who obtain the benefit of a

lawsuit without contributing to its costs are unjustly enriched at the successful litigant's

expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Paul, Johnson, Alston &*

*Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).  Thus, the non-participants who are

enriched or benefitted by the suit, should share in the risks or costs incurred by the party

bringing the action.  *See also Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990).

**MEMORANDUM DECISION AND ORDER - 4**

Under the doctrines, the plaintiff may recover a "proportionate share of his costs from others who benefit from his efforts without contributing to them." *B.P. North America Trading, Inc. v. Vessel Panamax*, 784 F.2d 975, 977 (9th Cir. 1986), citing *Mills v. Electric Auto-Lite, Co.*, 396 U.S. 375, 391-92 (1970).

### (1)   Common fund doctrine

Under the common fund doctrine, attorney fees are awarded where the litigation has preserved or created a common fund for the benefit of others as well as themselves. *Id*. at 478.  By assessing attorney fees against the fund, the cost of litigation is shifted to all of the fund's beneficiaries. *Id*.  In considering the applicability of this doctrine, the Court first considers whether there is a fund.  According to the Ninth Circuit, "there must exist some identifiable assets on which a court can impose a charge." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 770 (9th Cir. 1977).

Plaintiffs here argue that the litigation has created a "'putative fund' resulting from the increase in reimbursement rates occurring as a result of this litigation." *Pl. Br.*, Dkt. 62-1 at 5.  Plaintiffs thus identify the assets as the amount owed to service providers per application of the new reimbursement rate, from the rate's retroactive effective date to the date when CMS approved it.  This amount under-calculates the actual benefit enjoyed by providers as a result of Plaintiffs' action, since the increased reimbursement rate continued – and continues – to provide the higher reimbursement level, after the date of CMS's approval.  However, by limiting the calculation in this way, the amount is clearly identifiable, thus the Court accepts it for purposes of this analysis.  The Court next considers whether it can exercise control over the assets and impose a charge.

**MEMORANDUM DECISION AND ORDER - 5**

The Ninth Circuit has held that, "[w]hat is crucial is that the court can legitimately exercise authority or control over the asset."  *Vincent*, 557 F.2d at 770 (citation omitted). The common fund doctrine has been applied to money judgments, *see Vincent*, 557 F.2d at 770, and where plaintiffs have obtained a settlement.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1046 (9th Cir. 2002); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1988).  There is no precedent for applying the doctrine to the circumstances presented here.

Defendants correctly note that the Court did not order the creation of a fund in this case.  Rather, applying the Medicaid Act and case law, the Court ordered Defendants to conduct a proper case study and propose an appropriate reimbursement rate to CMS in keeping with that study.  The assets identified by Plaintiffs are the result of Defendants' compliance with the Court's order and with applicable law.  But those assets were not directly contemplated by the Court.  Notably, if the cost study ordered by the Court had concluded that further reduction to the reimbursement rate was appropriate, then this same suit would have produced no identifiable assets benefitting a common group.  The Court thus agrees with Defendants that the assets are not within the Court's control. Plaintiffs have identified no authority to persuade the Court to extend the common fund doctrine here, and the Court finds none.  Because the Court finds this doctrine inapplicable, it need not consider whether the other required elements are satisfied.  *See Van Gemert*, 444 U.S. at 478-79.

### (2)     Substantial benefit doctrine

The less-restrictive substantial benefit doctrine permits recovery of attorney fees where (1) there is an ascertainable group of individuals, (2) who have substantially benefitted from the litigation, and (3) "where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *B.P. North America*, 784 F.2d at 977, quoting *Mills*, 396 U.S. at 393-94.  As to the first element, the litigation need not be a class or derivative action.  *Reiser*, 605 F.2d at 1139-40 ("The form of the suit is not a deciding factor..." because imposing such formulaic requirements "would be inconsistent with the equitable foundations of the exceptions.")  Here, the service providers affected by Plaintiffs' action form a finite group that is ascertainable by an audit of the reimbursement mechanism implemented by IDHW.

Regarding the second element, the benefit must "be something more than technical in its consequence," but need not be pecuniary in nature.  *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 395-96 (1970).  Here, Plaintiffs identify two distinct benefits to non-party service providers:  (1) enforcement of the right to reimbursement rates bearing a reasonable relationship to costs; and (2) the monetary increase in reimbursement rates. Defendants do not dispute that a benefit has been conferred.  The Court finds that the requisite benefit exists.

As to the final element, the Court considers a similar question as that discussed regarding the common fund doctrine – whether the Court has jurisdiction to spread the costs of the suit fairly and proportionately among the benefitting group.  *Van Gemert*, 444 U.S. at 479.  For the same reasons stated above, the Court finds it does not.  Those assets

**MEMORANDUM DECISION AND ORDER - 7**

deriving from the newly applied cost study and increased reimbursement rate are outside of the Court's control.  Thus the Court lacks authority to order payment of attorney fees from the assets.

Related to this reasoning, Defendants argue that the proposed assets are "a combination of federal and state monies," and thus beyond the Court's reach  *Def. Resp.*, Dkt. 63 at 4.  Plaintiffs offer no reply to Defendants' argument.  The Court is not persuaded by Defendants' attempt to characterize the issue as one of sovereign immunity, as Plaintiffs' suit was not one for monetary damages.  However, the Court agrees that the assets are not within the Court's control.  Plaintiffs having failed to demonstrate otherwise, the Court finds this element of the substantial benefit doctrine unsatisfied.  Accordingly, Plaintiffs' motion for fees under either equitable doctrine discussed here will be denied.

**2.     Motion to Enforce Order**

Plaintiffs urge the Court to order an accounting of funds due, and to require all owed amounts to be deposited with the Court.  According to Plaintiffs, IDHW did not "automatically reprocess the claims" as it stated it would.  Instead, IDHW has required service providers to "reverse" prior bills for services and re-invoice those bills at the new rate.  Without an accounting and Court control over the funds due, Plaintiffs argue, there is no way to ensure full compliance with the Court's order.

Defendant counters that there is no evidence that IDHW has failed to comply with the Court's order.  Rather, Plaintiffs' efforts are a guise to establish a fund to bolster Plaintiffs' argument for attorneys' fees under the common fund doctrine.  Defendants

**MEMORANDUM DECISION AND ORDER - 8**

note that Plaintiffs' supporting declaration shows reluctance by the declarant to trust

IDHW's fiscal agent.  *Scott Dec.*, Dkt. 64-2.  But, there is no indication that the

reimbursement process identified by IDHW has not or would not work.  Again, Plaintiffs

offer no reply to Defendants' opposition.  The Court agrees that Plaintiffs have not

demonstrated a failure to comply.  Absent evidence of non-compliance, the Court finds

no basis to intervene in IDHW's process, or otherwise continue jurisdiction in this matter.

Accordingly, Plaintiffs' motion to enforce will be denied, and the Court will enter final

judgment dismissing this matter in its entirety.

**ORDER**

**IT IS ORDERED:**

1.      Plaintiffs' Motion for Attorney Fees (Dkt. 62) is **DENIED**.

2.      Plaintiffs' Motion to Enforce Order (Dkt. 64) is **DENIED**.

3.      A separate Judgment will be entered dismissing the matter in its entirety.

DATED: March 12, 2012

B. Lynn Winmill
Chief Judge
United States District Court